UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RANI THYKKUTTATHIL and RYAN WELLMAN, wife and husband,

Plaintiff,

v.

JAMES KEESE, III, and SARA KEESE, husband and wife, and their marital community composed; CAPITOL ADVOCACY GROUP, LLC, a foreign limited liability company; CAPITOL HEALTH ASSOCIATES, LLC, a foreign limited liability company; and, PROGRESSIVE MAX INSURANCE COMPANY, a foreign insurer;

Defendants.

CASE NO. C12-1749RSM

ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT

This matter is before the Court for a ruling on plaintiffs' motion for summary judgment as to defendants' tort liability, and partial summary judgment on causation and plaintiffs' past medical expenses. Dkt. # 63. Defendants have opposed the motion in all respects. The Court has fully reviewed the parties' memoranda and declarations, and finds that issues of fact foreclose summary judgment on all issues. The motion for summary judgment and partial summary judgment shall accordingly be denied.

BACKGROUND

Plaintiffs Rani Thykkuttathil and Ryan Wellman, husband and wife, filed this tort action in state

ORDER - 1

court on June 22, 2011. Dkt. # 1-2. The claims arise from a June 23, 2009, automobile accident in which plaintiffs were injured. The original complaint names as defendants the driver of the other car and his wife. *Id*. On September 20, 2012, plaintiffs moved for leave to amend their complaint to add additional defendants, specifically the employers of defendant James Keese, and the plaintiffs' own insurer (defendant Progressive), under the Underinsured Motorist ("UIM") provision of their policy. Progressive removed the action to this Court under the diversity provisions of 28 U.S.C. § 1332. The matter is set for a bench trial beginning January 13, 2014.

This is one of three motions for summary judgment or partial summary judgment filed by the parties. The other two motions, defendants' motion for summary judgment on plaintiff Wellman's claim for loss of consortium and defendants' motion to dismiss claims against Mr. Keese's employers, will be addressed in separate orders. Plaintiffs in this motion ask for judgment as a matter of law on the question of Mr. Keese's tort liability for causing the automobile accident, together with a ruling that this accident was the sole cause of their injuries, and a finding that all past medical care, and the charges therefore, are reasonable and necessary. The Court will first address the motion on liability, because if judgment cannot be granted on that issue, the Court need not proceed to consider plaintiffs' motions on causation and the reasonableness of medical care and expenses.

It is undisputed that on June 23, 2009, the plaintiffs were driving south on I-5 in Seattle, near the Mercer Avenue exit, in their 2004 Mini Cooper, with Mr. Wellman as the driver and Ms. Thykkuttathil as the passenger. Mr. Keese, a resident of Alexandria, Virginia, was traveling behind plaintiffs' car, in the same lane. Plaintiffs' car stopped and Mr. Keese's car read-ended the plaintiffs' car, causing them injuries. The nature and extent of those injuries are in dispute, as are the facts surrounding the collision.

Plaintiffs ask for summary judgment on liability on the basis of "the long standing rule of law that places the primary duty on the following driver to avoid a collision with the leading car." Motion for Summary Judgment, Dkt. # 63, p. 8. They argue that the emergency doctrine does not apply. *Id*. They assert that Mr. Keese, a resident of a large metropolitan area, would "know[] full well that freeways routinely become congested . . . and it is common for traffic to come to a stop. 'Stop and go' traffic is the norm in most metropolitan areas and has been for years." *Id*., p. 9. They ask the Court to find that Mr. Keese "breached his duty not to run into a car lawfully stopped in front of him in stop and

ORDER - 2

go freeway traffic and is therefore liable as a matter of law." *Id.*, p. 8.

Plaintiffs' arguments are based on a selective presentation of the facts and their own conclusions as to what Mr. Keese knew or should have known, lead inexorably to a finding of liability on the part of the following driver. There are additional factual considerations to be weighed by the trier of fact, after a full presentation of those facts. The parties here have presented very different versions of the facts, and indeed plaintiffs have themselves presented two different versions, such that the trier of fact must be allowed to weigh the evidence and make credibility determinations.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the entry of judgment as a matter of law. *L.A. Printex Industries, Inc., v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir.2012). The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" and identifying those portions of the materials in the record that show the absence of a genuine issue of material fact. Fed.R. Civ.P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to identify specific factual disputes that must be resolved at trial. *Hexcel Corp. v. Ineos Polymers, Inc.,* 681 F. 3d 1055, 1059 (9th Cir.2012). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000). The mere existence of a scintilla of evidence in support of the non-moving party's position will not preclude summary judgment, however, unless a reasonable jury viewing the evidence in the light most favorable to the nonmoving party could return a verdict in its favor. *U.S. v. Arango*, 670 F.3d 988, 992 (9th Cir.2012).

### II. Analysis

Plaintiffs contend that under the "following driver rule" there is no evidence to support the "emergency" exception that could rebut Mr. Keese's prima facie negligence. Under Washington law, where two cars are traveling in the same direction, the primary duty of avoiding a collision rests with the

ORDER - 3

following driver.

> In the absence of an emergency or unusual conditions, he is negligent if he runs into the car ahead. . . . The following driver is not necessarily excused even in the event of an emergency, for it is his duty to keep such distance from the car ahead and maintain such observation of that car that an emergency stop may be safely made.

*Ryan v. Westgard,* 12 Wash. App. 500*,* 691-92 (1975); quoting *Miller v. Cody*, 41 Wash. 2d 775, 778 (1953).

However, a following driver is not negligent as a matter of law when he collides with the preceding vehicle if the preceding vehicle stops suddenly and without warning at a place where a sudden stop is not to be anticipated.  In such a situation, the trier of fact must consider whether the following driver was traveling closer to the preceding vehicle, or at a greater speed than reasonable care required under the circumstances. It is for the trier of fact to decide whether the circumstances were such that a sudden stop or decrease of speed was to be anticipated. While the following driver has the primary duty of avoiding an accident, he is not guilty of negligence as a matter of law simply because he collides with a vehicle in front of him. *Vanderhoff v. Fitzgerald*, 72 Wash. 2d 103, 106 (1967).  A prima facie showing of negligence may thus be overcome by evidence that some emergency or unusual condition not caused or contributed to by the following driver caused the collision, in which event the liability of the following driver becomes a question of fact.

Plaintiffs' conclusory statement that Mr. Keese, as a resident of an urban area, would "know[] full well" that it is common for traffic to come to a stop on a freeway, and the unsupported statement that "'[s]top and go' traffic is the norm in most metropolitan areas" do not constitute evidence of negligence as matter of law.  Under Washington law, a following driver is required to foresee the likelihood of sudden stops in front of him in some circumstances and not in others.  *Ryan v. Westgard*, 12 Wash. App. At 506, citing  *Felder v. Tacoma*, 68 Wash. 2d 726 (1966);  *James v. Niebuhr*, 63 Wash. 2d 800 (1964).  When a driver is traveling at the lawful speed limit in the center lane of a freeway, there is not an absolute requirement to presume that sudden stops or abrupt slowdowns will occur in front of him.  *Id*.  Thus, "the circumstances which have led courts to find negligence as a matter of law in rear-end collisions on other roadways are not necessarily controlling in rear-end collisions on high-speed,

ORDER - 4

urban expressways." *Id.*, quoting *Nei v. Contracting and Material Co.*, 93 Ill.App. 2d 226, 266, 236 N.E. 264 (1968).

The parties have presented conflicting descriptions of the state of traffic on I-5 at the time of the collision. In their motion, plaintiffs characterize the traffic as "stop and go," as a basis for their assertion that Mr. Keese should have reasonably anticipated the need to come to a full stop at any time. However, nowhere have plaintiffs provided a definition of the term "stop and go" with respect to freeway traffic, nor has either plaintiff actually testified that the traffic was "stop and go" prior to the time it slowed and came to a stop.

In her supporting declaration, Ms. Thykkuttathil states that they were on their way to a volunteers' appreciation event for the Seattle International film Festival ("SIFF"), and that Mr. Wellman was driving. She states that "[t]raffic was typical Tuesday evening I-5 traffic" and that "[i]t began to slow across all lanes as we approached the Mercer Street Exit." Declaration of Rani Thykkuttathil, Dkt. # 64, p. 2. Then, she states:

> When the traffic in front of us slowed and stopped, Ryan gradually slowed and stopped without any problem. There was no slamming on of the brakes or anything sudden or emergent about his stop. He simply slowed and stopped as we so often do in Seattle freeway traffic. There was plenty of room between the front of our Mini Cooper and the car that was stopped in front of us. We had been stopped for a moment or two when I heard the sound of tires screeching behind us.
>
> . . . .
>
> There was no emergency or other unusual circumstance at or around the area of where the traffic slowed and stopped that evening. The slowing and stopping of the freeway traffic was entirely normal for Seattle traffic.

*Id.*

In his separate declaration, Mr. Wellman states,

> I was driving our 2004 Mini Cooper. I drive on I-5 virtually every day. What was memorable about that Tuesday evening was that it was entirely unmemorable as regards the conditions and traffic. I saw nothing in front of me or alongside me that was out of the ordinary.
>
> As we approached the Mercer Street Exit traffic was heavy. It began to slow. I slowed with the traffic. The traffic in front of me began to stop. I began to brake to a stop. The traffic in front of me stopped. I stopped. All in all, it was a completely normal and routine event within the context of the stop and go traffic I encounter almost daily on I-5 in and around downtown Seattle, as well as north and south of downtown Seattle.

ORDER - 5

> At no time prior to the collision did I feel, observe or sense the need to do anything urgently. The traffic in front of me was clearly visible to me at all times. When the traffic in front of me slowed and stopped, I gradually slowed and stopped without any problem. I did not slam on the brakes. I came to a stop with plenty of distance between the front of our small car and the rear of the car stopped in front of me.
>
> . . . .
>
> There was no emergency or other unusual circumstance at or around the area of where the traffic slowed and stopped.

Declaration of Ryan Wellman, Dkt. # 65, pp. 2-3.

These descriptions of slow, heavy traffic in all lanes, and the allegation of "stop and go" conditions in the motion, are in stark contrast to the testimony that Ms. Thykkuttathil gave at her deposition, taken March 29, 2012. There, she testified,

> We were traveling in the car at high speed, freeway speed, and we were on I-5 south, I believe, near Seattle Center; and then there was a service vehicle on the side of the road and some flashing lights, and then the traffic came to a complete stop; and then I heard some screeching tires; . . .

Declaration of Marilee Erickson, Dkt. # 82, Exhibit A. The mention of "flashing lights" raises the question of whether there was an unexpected or emergency condition, or the appearance of one, that caused the traffic to stop unexpectedly and without warning.

Mr. Keese also described the emergency vehicle with the flashing lights, and the effect on traffic, in his declaration;

> On June 23, 2009, I was driving south on I-5 in Seattle. I was traveling with the flow of traffic and at a safe distance behind the vehicle in front of me.
>
> As I approached the exit for Mercer Street, the vehicles in front of me stopped suddenly and unexpectedly for a vehicle with flashing lights that was on the shoulder and appeared to be moving into the lane of travel.
>
> As soon as I saw brake lights, I also braked. Although I was applying my brakes, because the vehicles in front of me had suddenly stopped, I was instantly faced with a choice of moving to the left or the right in an attempt to avoid an accident, or staying within my lane and applying the brakes.
>
> I immediately looked to the left to see whether I could safely move into the adjacent lane. It was not safe to do so because there was traffic in the lane.
>
> The shoulder to the right was too narrow to allow me to move out of the lane of travel.
>
> I tried to stop as quickly as possible but was unable to do so without first hitting the rear of the Mini-Cooper.

ORDER - 6

>Traffic on that section of southbound I-5 was traveling at the speed limit until the sudden stop because of flashing lights from either an emergency or a construction vehicle.
>
>Because the traffic was flowing at the speed limit, I could not anticipate that the vehicles in front of me would suddenly stop.

Declaration of James Keese III, Dkt. # 81, ¶¶ 2 - 9.

Plaintiffs in their reply describe Mr. Keese's declaration as self-serving and also as speculative with respect to the reason that traffic came to a stop (the flashing lights). Plaintiffs assert that "Mr. Keese cannot know why the traffic in front of him came to a stop." Plaintiffs' Reply, Dkt. # 88, p. 4. However, Ms. Thykkuttathil also mentioned the flashing lights and linked them to the stopped traffic, in her deposition testimony. As for the "self-serving" nature of Mr. Keese's declaration, the plaintiffs' declarations are also self-serving. That is not a basis for disregarding sworn statements. As noted above, the Court may not make credibility determinations nor weigh the evidence when considering a motion for summary judgment.

When the Court views the evidence presented in the light favorable to defendants, as the non-moving party, it finds that there is a genuine dispute of material fact with respect to the traffic conditions and the manner in which the traffic and the parties' vehicles stopped. Such questions of fact preclude a summary determination of liability. Without such liability determination, the Court cannot address the remaining portions of plaintiffs' motion on causation of their injuries, and the necessity of their medical treatment. Plaintiffs' motion for summary judgment is accordingly DENIED in all respects.

DATED June 5, 2013.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 7